RHODES v. COMMISSIONER OF INTERNAL REVENUE.

No. 7572.

Circuit Court of Appeals, Sixth Circuit.

Jan. 17, 1939.

F. E. Hagler, of Memphis, Tenn., for petitioner.

L. W. Post, of Washington, D. C. (James W. Morris, Sewall Key, and L. W. Post, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, ALLEN and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals redetermining a deficiency of $3,222.13 in the income taxes of the petitioner for the calendar year 1927.

On August 10, 1925, the petitioner, by land contract, agreed to purchase for $20,000 Lot 4, Block 18, LaGorce Subdivision in the city of Miami Beach, Dade County, Florida. The purchase price to be paid was $13,250 cash within thirty days and a mortgage of $1,500, payable $500 per annum and the assumption of an existing land contract on the property with an unpaid balance of $5,250.

Payments of $15,762.50 were made under the contract and the petitioner paid accruing city, state and county taxes to and including 1926, the last year's taxes being paid on April 29, 1927, but no deed was made to the property.

As the result of a hurricane in September, 1926, and again in September, 1927, the property was covered with debris and additional deposits of sand. The petitioner made several trips to Florida during these two years seeking a purchaser for the property without success, having purchased it for the purpose of resale.

After the second hurricane, the petitioner concluded the property was worthless as he could find no purchaser for it and refused to make further payments under his purchase contract, sought to abandon it and charged off of his books of accounts as a loss the sum of $15,762.50 which he had paid and deducted this amount as a loss from gross income in his income tax return for 1927.

In the spring of 1928, he received an unsolicited cash offer of $1,000 or $1,100 which he accepted and assigned his contract to the purchaser. The respondent disallowed the petitioner's deduction for the calendar year 1927 on the ground that the loss occurred in the year 1928, and was sustained by the Board.

On August 13, 1925, the petitioner and J. A. Carroll jointly purchased from a man named Spann and his wife, Lots 1 and 2, Block 13, of the Dixie Highway Tract situated in Dade County, Florida, on the Dixie Highway about sixteen miles north of Miami, petitioner having three-fourths interest and Carroll one-fourth. The lots were small, vacant and sandy, covered with palmetto brush and had no value except for building. No development had taken place in the immediate vicinity and the purchase was solely for the purpose of speculation.

The purchase price was $60,000, payable $12,500 cash, the assumption of a first and second mortgage for $5,500 and $2,500 respectively and the balance of $39,500 payable in four annual installments of $9,875 each, secured by a third mortgage on the property. The deed was taken in the name of the petitioner and the notes for the deferred payments signed by him. The initial cash payment and a part of those maturing in 1926 and 1927 were paid by petitioner and his joint adventurer, Carroll.

In December, 1926, the sellers instituted a suit against the petitioner under an acceleration clause of the mortgage because of default in payment and obtained judgment against him in 1927 which he and Carroll paid.

In 1927, the property was sold for unpaid 1926 taxes due the city of Miami, the County of Dade and the State of Florida, and was purchased by the respective governmental units with statutory certificates of purchase issued to them. This property was also in the path of the 1926 and 1927 hurricanes and received further deposits of sand and debris.

At various times the petitioner and his associate made diligent, but unsuccessful, efforts to find a purchaser and in 1927 after the last hurricane and after the Florida land bubble had burst, they concluded the property had no market value and was worthless and made no further investment in it and ceased all efforts to sell it. They had no offers to sell it at any price.

Near the close of the calendar year 1927 the petitioner charged off of his books of accounts as a loss $28,875, the amount he had expended for this purchase, and deducted this sum from gross income on his income tax return for that year. The respondent disallowed it on the ground that petitioner still retained title to the property and was sustained by the Board. The losses were deducted by the petitioner under the Revenue Act of 1926, c. 27, 44 Stat. 9, 26, Section 214(a) which provides:

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *."

and Treasury Regulations 69:

"Art. 141. Losses.—Losses sustained during the taxable year and not compensated for by insurance or otherwise are fully deductible (except by nonresident aliens) if—

"(a) Incurred in a taxpayer's trade or business, or. * * *"

Common sense interpretation is the safest rule to follow in the administration of income tax laws. Gross income and deductions flow from trade, commerce and dealings in property carried on in the ordinary business way and in the determination of taxes men should measure both by ordinary, everyday business standards. Compare Woolford Realty Co. v. Rose, Collector, 286 U.S. 319, 332, 52 S.Ct. 568, 76 L. Ed. 1128; United States v. Hardy, 4 Cir., 74 F.2d 841.

In arriving at losses the taxpayer should determine in the first instance the tax year in which sustained and such deductions should be allowed by the Commissioner of Internal Revenue unless it appears from the facts that the taxpayer was clearly unreasonable and unfair at the time he was compelled to make his decision.

Subsequent events may show a taxpayer to have been wrong but these must have been ascertainable by the exercise of ordinary business care and judgment at the time he made his income tax return.

Two basic facts must always be present to authorize the taxpayer to deduct a loss; first, the amount thereof, second, an identifiable event clearly showing the year it occurred. Generally speaking, the income tax law is concerned only with realized gains and ascertained losses. There is an exception to this rule, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction and in certain circumstances even before they are absolutely sustained. Lucas, Commissioner v. American Code Company, 280 U. S. 445, 452, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010.

The question whether property becomes worthless during a particular year is one of fact. If substantial evidence is presented upon which the Board of Tax Appeals makes a factual determination, the only question of law presented in the review is whether the Board's findings are supported by substantial evidence. Phillips v. Commissioner, 283 U.S. 589, 605, 51 S. Ct. 608, 75 L.Ed. 1289.

However, the evidence before the Board to support its conclusion must be more than a mere scintilla. It must be such relevant evidence as a reasonable mind might accept as adequate to support its conclusion. Consolidated Edison Company of New York, Inc., et al. v. National Labor Relations Board et al., 59 S.Ct. 206, 83 L. Ed. —, decided December 5, 1938.

The Board and the Courts may take judicial notice of a business depression and require less specific facts to prove a loss when a depression is current. This does not mean, however, that a taxpayer can justify a loss deduction by merely offering testimony that business generally is depressed or stagnant. Higginbotham-Bailey-Logan v. Com'r, 8 B.T.A. 566; Citizens' National Bank of Orange v. Commissioner, 4 Cir., 74 F.2d 604, 100 A.L.R. 699; Atherton v. Anderson, 6 Cir., 86 F.2d 518; Great Northern Railroad Company v. Weeks, 297 U.S. 135, 153, 56 S.Ct. 426, 80 L.Ed. 532.

In the case here the respondent concedes the petitioner sustained a loss on the purchase of the Davis property, Lot No. 4, but

insists that it was not sustained until 1928, because there was no identifiable event in 1927 showing its worthlessness and that its subsequent sale for $1,000 or $1,100 in 1928 conclusively demonstrates it could not have become worthless in 1927.

It may be judicially noticed that in 1924 and 1925, there was a widespread land speculation in Florida property, during which period large sums were paid and promised for unimproved lots along its southern coast and that there were severe hurricanes adversely affecting land values in 1926 and 1927 and in the latter year practically all purchasers for these properties disappeared and the value of unimproved lands collapsed.

The Board, in its findings of fact, says:

"The boom in Florida real estate had burst, a second hurricane had come and things were on the decline."

The small sum received by petitioner in 1928 is not persuasive evidence that the property had any substantial value in 1927. He originally contracted to pay $20,000 for the lot. The receipt of one-twentieth of this sum in 1928 proves it was practically worthless prior thereto.

The fact that a taxpayer recovers a small part of a loss in a subsequent year does not invalidate it as such when its deduction in the year taken was based on the exercise of reasonable judgment from facts then known. United States v. S. S. White Dental Mfg. Company, 274 U.S. 398, 403, 47 S.Ct. 598, 71 L.Ed. 1120. Such recovery becomes a part of gross income the year of receipt. Burnet, Commissioner, v. Sanford & Brooks Company, 282 U.S. 359, 367, 51 S.Ct. 150, 75 L.Ed. 383; Cooper v. United States, 8 Cir., 9 F.2d 216.

The hurricane in 1926 and its recurrence in 1927, the collapse of land speculation in Florida in 1927, the petitioner's unsuccessful effort in 1926 to sell the property continued in 1927 with the same result, and his complete abandonment and charging off of his books of the property in 1927 were the identifiable events that established the loss in that year. An examination of the case of International Educational Publishing Company v. Commissioner, 3 Cir., 79 F.2d 343, relied on by the Board, presents no question common to this case.

The identifiable events showing a loss on the Spann property in 1927 are the same as those applicable to the Davis property except the petitioner was sued for the unpaid purchase price in December, 1926, and a judgment obtained against him in 1927. A lien was retained on the property to secure these deferred payments but the seller did not undertake to enforce it. The Board rested its decision largely on its rule that a loss on real estate is not deductible so long as the taxpayer retains title in fee.

The unsoundness of this principle is readily apparent when subjected to the searchlight of reason. The ownership of real estate may become a burden with recurring taxes and the impossibility of finding a purchaser at any price. The Spann property was sold in 1927 for 1926 delinquent state, county and city taxes and under the provisions of Section 972 of the Compiled General Laws of Florida, there being no bidders, it was acquired by the State and under the provisions of Section 983, a sales tax certificate was issued to the State and held by the Clerk of Dade County, Florida.

Under Section 896 of the Statute, the State has a lien upon lands for all taxes duly assessed and unpaid. Where it receives a sales tax certificate, the owner of the land or others interested therein may redeem it within two years and, unless redeemed, the title to the property vests in the State. During the period of redemption, the State may by an equitable proceeding foreclose its lien, in which event the owner is divested of title. Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140.

Standing alone, a tax sale of property is not an identifiable event showing its worthlessness to the owner the year of the sale, but if the taxpayer is financially able to pay the taxes and refuses to do so, the tax sale is of weight along with other evidence as to the time the loss became fixed. The loss statute makes no distinction between real and personal property and there may be an abandonment of real estate in a very practical sense without the taxpayer divesting himself of legal title. Denman v. Brumback, 6 Cir., 58 F.2d 128.

In no case should a taxpayer be permitted to deduct a loss fully realized, unless the amount thereof and the year in which sustained can be ascertained with reasonable certainty, regardless of how he keeps his books. This, however, does not mean a calculation accurate to the penny, nor the exact day of the loss. If its amount and the year of its occurrence is factually rea-

sonably ascertainable, it is allowable. The petitioner's claimed losses meet this test. The Board's findings are not supported by substantial evidence and its order is reversed.