## COMMISSIONER OF INTERNAL REVENUE v. PETERMAN et al.

### No. 9546.

Circuit Court of Appeals, Ninth Circuit.

April 4, 1941.

974

HANEY, Circuit Judge, dissenting.

Samuel O. Clark, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, Edward M. English, and Morten K. Rothschild, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, of Washington, D.C., for petitioner.

J. P. Patten, of Seattle, Wash., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

The respondents filed separate petitions in the United States Board of Tax Appeals for redetermination of an asserted deficiency in the income tax of each for the calendar year 1936. The four petitions were consolidated for hearing and decision in the Board of Tax Appeals, and the facts stipulated. The Board rendered a memorandum opinion, which is not reported. Only a part of each asserted deficiency was in controversy, and as to that part the Board found in favor of the taxpayers, and the decisions were entered substantially reducing each asserted deficiency. Petition for review filed by the Commissioner brings the cause before us.

The facts are as follows: T. F. Peterman conducted the business of Peterman Manufacturing Company as a sole proprietorship until his death. Thereafter, on August 2, 1935, the widow, Katherine T. Peterman, daughter, Gladys Peterman, and son, T. A. Peterman, formed a partnership under the firm name of Peterman Manufacturing Company, and continued the business, with T. A. Peterman as active manager thereof. Lida A. Peterman is the wife of T. A. Peterman; they filed separate income tax returns for the calendar year 1936, on the community property basis.

In 1922, acting as agent for Katherine, T. A. Peterman acquired three adjacent parcels of property in the city of Tacoma, Washington (hereinafter referred to as the Lincoln Avenue property), for the purpose of a new plant site for Peterman Manufacturing Company. The purchase price of this property was $16,079.50. The property was not carried on the books of the Company until 1929, at which time proper bookkeeping entries were made, and no change was made in the book value of the property at the time the partnership was formed, and it remained on the Company

books at $16,079.50, until December 26, 1936, when it was charged to profit and loss. Subsequent to 1922 and prior to 1936, other real estate was acquired for and used as a new plant site.

All real estate taxes assessed against the Lincoln Avenue property for the years 1922 to 1928, inclusive, were paid and taken as deductions from gross income for the respective years. Real estate taxes on said Lincoln Avenue property for the years 1929 through 1935, in the aggregate amount of $2,511.04, were accrued on the Company's books, taken and allowed as deductions in the income tax returns for the respective years in which the real estate taxes were assessed, but were not paid. The real estate taxes for the calendar year 1936 were not accrued or paid and were not deducted in the income tax return for that year.

The County of Pierce, State of Washington, wherein was situated the Lincoln Avenue property, by reason of nonpayment of taxes, advertised the said property for sale and issued certificates of delinquency in 1936. The property, consisting of three parcels, was put up for sale December 26, 1936, and, no other bidder appearing, was struck off to the County of Pierce. Faulty description caused the County of Pierce to believe the sale void and the property was again advertised for sale and bid in by the said County December 17, 1938, but the property was again erroneously described. Opportunity to sell a portion of the property arising, and the County again conceiving its title clouded, it procured a quitclaim deed to the property from T. A. and Lida A. Peterman on June 13, 1939. No deed had been issued in respect of said property prior to June 15, 1937, but deeds to the property were issued by the Treasurer of Pierce County to Pierce County on July 1, 1937.

The Peterman Manufacturing Company was financially able to pay the delinquent taxes due on the Lincoln Avenue property on December 26, 1936, the day said property was sold for taxes.

The partnership return filed by Peterman Manufacturing Company for the calendar year 1936 claimed a deduction from gross income of $13,568.46, computed by reducing the cost of the Lincoln Avenue property ($16,079.50) by the aggregate of real estate taxes thereon, theretofore deducted from gross income ($2,511.04) but not paid. The Commissioner disallowed the deduction of $13,568.46 in computing partnership income and increased the distributive share of each partner accordingly, and the income of the wife of partner T. A. Peterman, stating in the respective deficiency notices: "In computing partnership income, it is held that: * * * The loss, if any, on the Lincoln Avenue property does not fall within the year 1936 and is, therefore, not an allowable deduction for said year."

Under the law of the State of Washington, at all times here material, real property upon which certificate of delinquency had been issued could be redeemed at any time prior to issuance of tax deed upon payment, by or for the owner of the certificate upon such property, of the amount for which the property was sold, plus interest, taxes, costs, etc., accrued thereon. Wash.Rem.Rev.Stat. § 11280. On January 15, 1937, the legislature of the State of Washington enacted a statute, Wash.Rem.Rev.Stat. § 11280-1, which provided: "No deeds shall be issued on sales now pending pursuant to judgments in an action by a county foreclosing a certificate of delinquency for taxes on real property until July 1, 1937. Until such date all rights of redemption under existing laws may be exercised by the persons entitled thereto."

On the petitions for redetermination the taxpayers contended the loss occurred in the calendar year 1936 and that the deduction as an ordinary loss was authorized. The Commissioner contended the loss was not sustained in 1936 by reason of the fact that there still existed in the partnership a right of redemption. He further contended the loss, if any, was a capital loss and that the petitioners were not entitled to deduct from gross income the full amount of the loss. The Board held the loss was sustained in 1936, and the Commissioner here renews the contentions he made before the Board.

By Section 23(e) of the Revenue Act of 1936, 49 Stat. 1659, 26 U.S.C.A.Int.Rev. Acts, page 828, a taxpayer is allowed a deduction from gross income of "losses sustained during the taxable year and not compensated for by insurance or otherwise —(1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *." Such losses are known as "ordinary" losses, and the entire amount thereof may be deducted from gross income. In the case of "capi-

tal losses," however, there is a limitation of the amount of such losses which may be deducted from gross income, covered by Section 117(d) of the Revenue Act of 1936, 49 Stat. 1692, 26 U.S.C.A.Int.Rev.Acts, page 875, which reads as follows: "Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *"

■ The regulations require, and the decisions recognize, that claimed losses must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period, for which allowed. Treasury Regulations 94, Art. 23(e)-1; United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120; Higgins v. Smith, 308 U.S. 473, 475, 60 S. Ct. 355, 84 L.Ed. 406; Rhodes v. Commissioner, 6 Cir., 100 F.2d 966, 969; Tompkins v. Commissioner, 4 Cir., 97 F.2d 396, 401; Derby Realty Corp. v. Commissioner, 35 B.T.A. 335, 339; J. C. Hawkins v. Commissioner, 34 B.T.A. 918, 920, affirmed, 5 Cir., 91 F.2d 354.

■ We have before us, then, two questions, (1) whether the tax sale on December 26, 1936, was such an identifiable event as to fix the "loss" to the taxpayer as of that date, and (2) whether such loss was an "ordinary" loss, deductible in full, or a loss from sale or exchange of a capital asset, deductible only to a limited extent.

"The question," said the court in Rhodes v. Commissioner, 6 Cir., 100 F.2d 966, 969, "whether property becomes worthless during a particular year is one of fact." The Board made a determination of fact, and the only question of law presented for review is whether the Board's findings are supported by substantial evidence. Phillips v. Commissioner, 283 U.S. 589, 600, 51 S. Ct. 608, 75 L.Ed. 1289; Old Mission Portland Cement Co. v. Helvering, Commissioner, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367; Rhodes v. Commissioner, supra. As appears from the stipulation of facts, there was substantial evidence from which the Board might reasonably conclude the identifiable event took place in the year 1936. First, there was the failure of the Peterman Manufacturing Company to pay the real estate taxes on the Lincoln Avenue property for several years, although apparently able to do so; then, there was the tax sale; and finally, the ad-

justment entries upon the Company's books.

■ It is argued, however, that so long as the Company had the right to redeem the property from the tax sale, there existed, in a sense, a control over the property and there was not a complete severance of right to ownership and possession. Cf. Griffiths v. Commissioner, 308 U.S. 355, 357, 358, 60 S.Ct. 277, 84 L.Ed. 319; Higgins v. Smith, 308 U.S. 473, 476, 60 S.Ct. 355, 84 L.Ed. 406; Continental Oil Co. v. Jones, 10 Cir., 113 F.2d 557, 562, 563. On the question whether existence of a period of redemption precludes taking of a deduction for loss until expiration of the period of redemption, there is a difference of opinion. Supporting the Commissioner's position are Derby Realty Corp. v. Commissioner, 35 B.T.A. 335, appeal dismissed, 6 Cir., 92 F.2d 999 (expiration of statutory one-year period of redemption under mortgage foreclosure held identifiable event); Hawkins v. Commissioner, 34 B.T.A. 918, affirmed, 5 Cir., 91 F.2d 354 (twelve months statutory period of redemption after foreclosure of mortgage); Krauss v. Commissioner, 30 B.T.A. 62, 67 (where taxpayer had two years or more within which to redeem from tax sale). Notwithstanding the above decisions the Board here determined the case in favor of the taxpayer on the authority of Rhodes v. Commissioner, 6 Cir., 100 F.2d 966, 970, where it was said: "Standing alone, a tax sale of property is not an identifiable event showing its worthlessness to the owner the year of the sale, but if the taxpayer is financially able to pay the taxes and refuses to do so, the tax sale is of weight along with other evidence as to the time the loss became fixed."

While the argument of the petitioner is plausible, and the doctrine of the cases cited undoubtedly sound, we think, in view of the lack of a definite statutory period for redemption, and of the other facts heretofore outlined, the Board's decision on this point is supported by sufficient substantial evidence. See, also, Denman v. Brumback, 6 Cir., 58 F.2d 128, 129.

On the remaining question in the case, namely, whether the loss deducted was an "ordinary" loss, deductible in full, or a loss from a sale or exchange of capital assets, deductible only to a limited amount, the law has been clarified since submission hereof. The Supreme Court of the United States granted certiorari in two cases to reconcile

a conflict between two Circuits and on January 6, 1941, handed down its decisions. In Helvering v. Hammel, 61 S.Ct. 368, 369, 85 L.Ed. ——, the Circuit Court of Appeals, 6 Cir., 108 F.2d 753, had held that a loss established by a foreclosure sale was not a loss from a "sale" within the meaning of Sections 23(j) and 117(d) of the Revenue Act of 1934, 48 Stat. 680, 689, 715, 26 U.S. C.A.Int.Rev.Acts, pages 673, 708. The Board of Tax Appeals had ruled the loss deductible in full, and the Circuit Court of Appeals affirmed. The Supreme Court reversed these holdings. The taxpayer argued to the Supreme Court "that the 'losses from sales' which by § 23(j) are made deductible only to the limited extent provided by § 117(d) are those losses resulting from sales voluntarily made by the taxpayer, and that losses resulting from forced sales like the present not being subject to the limitations of § 117(d) are deductible in full like other losses under § 23(e) (2)." The Supreme Court held: " * * * that the 'sales' referred to in the statute include forced sales such as have sufficed, under long accepted income tax practice, to establish a deductible loss in the case of non-capital assets. Such sales can equally be taken to establish the loss in the case of capital assets without infringing the declared policy of the statute to treat capital gains and losses on a parity."

The high court went on to say that the statutory "provisions disclose a consistent legislative policy to enlarge the class of deductible losses made subject to the capital assets provisions without regard to the voluntary action of the taxpayer in producing them. We could hardly suppose that Congress would not have made provision for the like treatment of losses resulting from a forced sale of the taxpayer's property acquired for profit either in the 1934 or 1938 Act, if it had thought that the term 'sales or exchanges' as used in both acts did not include such sales of the taxpayer's property."

■ The respondents do not argue that the Lincoln Avenue property was not a capital asset within the definition of the Act.[1] They insist that the elements of a sale were lacking, there was no voluntary action on their part, and that they received no consideration for the property, the taxes not being enforceable against them personally. But the Supreme Court, in the Hammel case, said consent of the taxpayer to sale was not necessary to establishment of a "sale" within the taxing act. Nor is the lack-of-consideration argument persuasive. In the revealing light of practicality there is little to choose between losing property by foreclosure or by tax sale; in each the owner is deprived of his property, in each, a debt extinguished. Compare Rogers v. Commissioner, 9 Cir., 103 F.2d 790, 792; United States v. Hendler, 303 U.S. 564, 566, 58 S.Ct. 655, 82 L.Ed. 1018. See, also, Electro-Chemical E. Co. v. Commissioner, 61 S.Ct. 372, 85 L.Ed. ——, decided the same day as the Hammel case, supra.

In conclusion, the decision of the Board that the loss occurred in the calendar year 1936 is affirmed, but is modified so that the loss is deductible only to the extent provided by Section 117(d) of the Revenue Act of 1936.

The decision of the Board is modified and, as modified, affirmed, and the cause remanded to the Board of Tax Appeals for the entry of decision in accordance with the foregoing opinion.

HANEY, Circuit Judge (dissenting).

I think no loss occurred until the time for redemption had expired. Commissioner v. Hawkins, 5 Cir., 91 F.2d 354; Nickoll v. Commissioner, 7 Cir., 103 F.2d 619, 621. Such a situation seems to me to be analogous to the case where a judgment is entered, but the time within which an appeal might be taken has not expired. See H. Liebes & Co. v. Commissioner, 9 Cir., 90 F.2d 932, 938. In my opinion the loss herein claimed did not occur in the year 1936, and was therefore improperly claimed in the return for that year. The petition herein should be granted and the decision of the Board of Tax Appeals should be reversed.

---

[1] Section 117(b) of the Revenue Act of 1936, 49 Stat. 1691, recites: " * * * 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer * * * ."