## DENMAN v. BRUMBACK.

### No. 5944.

Circuit Court of Appeals, Sixth Circuit.

May 6, 1932.

E. E. Angevine, of Washington, D. C., and Lee N. Murlin, of Toledo, Ohio (W. J. Mahon, of Cleveland, Ohio, and C. M. Charest, of Washington, D. C., on the brief), for appellant.

O. S. Brumback, of Toledo, Ohio (John S. Brumback, of Toledo, Ohio, on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The appellee obtained judgment below for recovery of income taxes for 1922 collected under a deficiency assessment by appellant's decedent, collector of internal revenue. The assessment resulted from the disallowance of a deduction taken by the taxpayer for loss incurred on land in the Bitter Root Valley, Mont., purchased in 1912.

The land, in which the taxpayer had a half interest, was arid and undeveloped, was purchased for resale, and was to be made available for fruit raising by irrigation furnished by the Bitter Root Valley Irrigation Company, a private corporation. By 1920 the irrigation system had become deteriorated and useless, and the irrigation company insolvent and in receivership. The landowners in the Valley thereupon formed a political organization under the laws of Montana known as the Bitter Root Irrigation District, which purchased the old irrigation system. Application was made to the district court of the Fourth judicial district of Montana in and for the county of Ravalli, and an order obtained on the 24th of June, 1922, author-

izing a bond issue in the amount of $1,140,000, and levying a special tax assessment on all land in the district to pay the principal and interest of the bonds when due. The result of this court order was to subject the taxpayer's land to an assessment of $5 per acre for thirty years, in addition to general taxes and assessments. The effect of this tax was to make the land worthless, and the evidence in that respect is uncontradicted and conclusive. In 1922 the owner decided to take his loss, refused to pay further taxes, charged the land off on his books as an asset, had no further transactions with relation to it, and exercised no further dominion over it. The property was sold for taxes in 1923, and, pursuant to the tax sale, legal title was transferred in 1926. The deduction made by the taxpayer of the loss sustained was disallowed by the Commissioner of Internal Revenue on the theory that it did not become fixed in 1922 because the title to the land was still in the taxpayer, and that the identifiable event which determined the loss was the sale for taxes in 1923. The collector having died after the suit was brought, it was revived against his administrator, and, from a judgment in favor of the taxpayer, this appeal was taken.

 The loss claimed was deducted by Brumback under section 214 (a) of the Revenue Act of 1921 (42 Stat. 239). It was disallowed by the Commissioner in reliance upon the case of Appeal of A. J. Schwarzler, 3 B. T. A. 535, and upon article 141, of Regulation 62, of the Bureau of Internal Revenue, which provides inter alia that losses incurred in any transaction entered into for profit must usually be evidenced by a closed and completed transaction. The Schwarzler Case seems to hold, and it is contended by the appellant that it does hold, that losses suffered in the purchase of real estate cannot be determined until the property is sold, and that there can be no closed transaction with respect to real estate short of its sale, voluntary or enforced. We think no such inflexible rule is to be found either in the statute or the regulation. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. Lucas v. American Code Company, 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538. Having in mind the practical test, we think the case falls within United States v. White Dental Company, 274 U. S. 398, 47 S. Ct. 598, 600, 71 L. Ed. 1120. The pertinent language of that decision is as follows:

"The case turns upon the question whether the loss, concededly sustained by the respondent through the seizure of the assets of the German company in 1918, was so evidenced by a closed transaction within the meaning of the quoted statute and treasury regulations as to authorize its deduction from gross income of that year. The statute obviously does not contemplate and the regulations (article 144) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer. New York Ins. Co. v. Edwards, 271 U. S. 109, 116, 46 S. Ct. 436, 70 L. Ed. 859, cf. Miles v. Safe Deposit Company, 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923. But with equal certainty they do contemplate the deduction from gross income of losses, which are fixed by identifiable events, such as the sale of property (articles 141, 144), or caused by its destruction or physical injury (articles 141, 142, 143), or, in the case of debts, by the occurrence of such events as prevent their collection (article 151).

"The transaction evidencing the loss here was the seizure of the property of the German company. The loss resulted to the respondent because it was a creditor and stockholder of that company which, as a result of the sequestration, was left without property or assets of any kind."

Undoubtedly a sale of property is an identifiable event, more conclusive, perhaps, than anything else could be. This is not to say, however, that in the case of real estate it is the only possible identifiable event which can fix and determine a loss. Under the uncontradicted evidence in this case, the property became valueless as soon as the court order was entered fixing the assessment. The taxpayer, applying an eminently practical test, and exercising a reasonable business judgment, concluded that his investment was wholly lost, abandoned the land, and wrote it off as worthless. The history of the lands in the Bitter Root Valley as disclosed by the evidence confirms his judgment. About this there can be no doubt. From every practical viewpoint the order of the Montana court determined the matter. The land was thereafter worthless. We see no distinction in law between a loss suffered on real estate from one suffered on personal property if and when value becomes "finally extinct." Royal Packing Co. v. Comr., 22 F. (2d) 536 (C. C. A. 9); DeLoss v. Comr., 28 F.(2d) 803 (C. C. A. 2); Deeds v. Comr. 47 F. (2d) 695 (C. C. A. 6).

Appellant also contends that, since under the laws of Montana there can be no abandonment of title to real property, the loss could not have been sustained in 1922. We are not here concerned with the legal effect of abandonment upon title. We are considering abandonment of the property only as it relates to the time when value disappeared and loss resulted. That there may be abandonment of real estate in a very practical sense, even though divesting of legal title does not result, we have little doubt. Moreover, we are not at all governed in determining the issues here involved by the law of Montana. With respect to income tax liability and exemption the act of Congress has its own criteria, irrespective of local law. Weiss v. Weiner, 279 U. S. 333, 49 S. Ct. 337, 73 L. Ed. 720.

Judgment below is affirmed.